The second case of the morning call is 2-11-10-84, people of the state of Illinois v. Jarrett v. Brannon. On behalf of the Avalanche, Mr. Christopher McCoy. On behalf of the people, Mr. Matthew Schmidt. Thank you, Mr. McCoy. You may proceed. May it please the Court, Counsel. In this case, there are two issues before this Court. First, whether the evidence found in Mr. Brannon's jacket pocket should have been suppressed. And second, whether trial counsel was ineffective for failing to move to suppress his client's two statements. On the first issue, there are three sub-issues. First, whether the frisk was justified based on a reasonable suspicion that Mr. Brannon was armed and dangerous. Second, whether it was justified based on a search incident to arrest for an obstructing a police officer charge. And third, whether the Plain View Doctrine applied. Why don't you address the obstructing first, because that pretty much takes care of the other two, if that goes one way. On the obstructing, well, Mr. Brannon was not obstructing a police officer for two reasons. First, he did not know that he was obstructing an authorized act, because the situation here did not appear to be a normal traffic stop. Given the context of the case, the car the defendant's in drives into a parking lot, pulls into a parking space, and the defendant's exiting the passenger side door. Do you have to have subjective knowledge? If an officer tells you to do something, do you have to have subjective knowledge when you disobey that order, whether or not that's an authorized act within his or her official capacity? Yes, Your Honor. Section 311 requires knowingly obstructing a police officer. And so the defendant would have to know that the officers were engaged in an authorized act to know that he was obstructing an authorized act. For instance, if a police officer were just approaching a citizen on the street, the citizen would have the right to go about his business. Yet, in a Terry Stop situation, that's not the case. And so you would need to know that the act is authorized. Counsel, could I interrupt? Yes. It seems to me you're looking through the wrong end of the telescope. This is the question whether or not the police officer had a reasonable basis to believe that the defendant was obstructing. And the issue about whether or not the defendant knowingly obstructed or whether he had a reasonable belief in knowingly obstructing goes to guilt more than it goes to probable cause to detain or arrest, doesn't it? It would go to both probable cause and to guilt. You're correct that the question is did the officer have probable cause to arrest. But because the situation does not look like a traffic stop, the officer still needs to have probable cause that the defendant was knowingly obstructing. Let me ask you, you said it doesn't look like a traffic stop. In page 8 of your brief, you concede that the officers were justified in stopping the vehicle, correct? Yes. And he's a passenger in the vehicle, correct? Yes. And the police officers have the authority to direct and control the movement of both drivers and passengers, correct? That is correct. And there's no question in the record that your client knew these individuals, although they were plainclothes, that they were police officers, correct? Yes. And your client, according to your brief, you say that the testimony of the officers was that he did not get back in the vehicle when he was ordered to do so, correct? Yes, Your Honor. And that, regardless of the obstructing arrest or arrest for obstructing, for disobeying that order, that's also a petty offense of disobeying a police officer. He can be taken into custody for that offense and patted down, correct? Well, Your Honor, we don't challenge the fact, again, that the officer had a reason that he could stop Mr. Brannon. The problem is that he went beyond his authority when he then frisked him. I don't believe that... Would the officer take a person into custody for disobeying a lawful police order? Not if the person does not know he is, in fact, violating an authorized act. I'm not... Again, to Justice McLaren's point, that's a defense at trial. But the officer needs to have probable cause of all of the elements of a crime in order to arrest someone. And the officer needs to see that the defendant would know that he is doing something... Well, did he arrest him at the time he told him to get back in the car, or did he arrest him after he found the green leafy material or whatever it was that was in his coat pocket? He arrested him after he found what was in his pocket. So let's talk about detention, if we could. And relative to that, what about... You said the officer had no right to frisk him. I think it would be more precise to say the officer had no right to pull bulges or things that merely created a bulge out of one's pocket, but the facts were that he shined a flashlight and saw the contraband in plain view rather than actually extricating it from the coat prior to knowing what it was. Your Honor, the plain view exception does not apply in this case for two reasons. First and foremost is the fact that he finds the substance, Officer Gardner finds the substance only after he has illegally frisked Mr. Brannan. And the fact is that this, he touches the pocket, he feels this item in the pocket, he may not know what it is, but there's no evidence to suggest that this item would have been visible had he not frisked the defendant prior to shining the flashlight in the pocket. The second reason the plain view exception does not apply is that a person has a reasonable expectation of privacy on their person. And you don't expect a person, a normal individual walking down the street to shine a flashlight into your pocket. And this differentiates it from the case of, I believe it's Hampton, where the officer shines a flashlight into a vehicle. It's a personally intrusive search. You almost have to touch the person able to do it. And so because of this reasonable expectation of privacy, the plain view exception does not apply here. When you say he shined the flashlight in the pocket, you don't mean he stuck the flashlight in the pocket and turned it on. You mean he held the flashlight outside the pocket and illuminated the inside of the pocket with photons. Yes, Your Honor. Thank you. This would be a landmark case. Remember, we're saying there's an expectation of privacy in this situation by shining a flashlight in the pocket. And I've never seen a case like that. All the flashlight cases I've seen, none involving pockets, have to do with cars and other areas, and shining flashlights is not a search. Well, again, I don't think this court has to hold that. I think this court can hold that seeing this item was the fruit of the illegal frisk, and the reasonable expectation of privacy is just an alternative basis. Furthermore, I don't think it's a landmark decision to say that a person's physical body has a certain expectation of privacy in it when they're on the street and what they are wearing. Was the driver allowed to leave in the vehicle? The testimony is a little unclear. It seems that he was not offered, he was not given any citations. It seems that he was, in fact, allowed to leave in the vehicle,  but no citations were issued to the driver. Yes, the officers testified, I believe, that the driver did not have a driver's license or valid insurance, yet he was not given any citations. Turning once more to the obstructing charge, a second reason why there was no probable cause to arrest Mr. Brannon for obstructing was because this was not a material delay. The testimony is that Officer Gardner was able to, quote, around the front of the SUV and get in front of Mr. Brannon within three to four seconds of Officer Gardner exiting his car. So the end result is there's only a mere matter of seconds before the defendant is stopped, and as a result, there's not a material delay, a material impediment that's necessary for obstructing. As seen in the Comage case and in this Court's decision in Kopolinsky, you need a material impediment in order to be found guilty of obstructing. Now, again, we're going to probable cause, but the fact that this delay, again, it's only a mere second, shows that Mr. Brannon was not obstructing the officers. Assuming arguendo that the statement made by the defendant should not have been admitted, was it reversible error or prejudicial error? On the second issue? Yes. It would be prejudicial error if both of the statements were, in fact, suppressed, and that's because the defendant, and that's just based on the controlled substances charge, the heroin that was found on the passenger seat of the vehicle, and it's important because it was found after Mr. Brannon had been taken out of the car and some minutes after he'd been out of the car and the driver had been alone in the car. So there would be a genuine issue of fact as to whether Mr. Brannon knowingly possessed this controlled substance if, in fact, his two statements were not admitted into trial. And, in fact, in the State's brief, the State does not argue that the defendant would not be prejudiced. Similarly, they don't argue that the first statement was admissible. So, really, the second issue on ineffectiveness turns on the admissibility of Mr. Brannon's second statement and whether it was the result of impermissible question-first-warned-later interrogation. And under the United States Supreme Court case of Siebert and the subsequent Illinois Supreme Court case of Lopez, there's a two-part analysis. First, courts look for evidence of deliberateness, and second, they look for curative measures. Siebert recognized that officers often, in fact, rarely will admit to deliberately withholding a random warning. So other factors are taken into consideration. In fact, in Lopez and in People v. Alfaro, a later appellate court decision, officers denied deliberately using this tactic, and yet those courts found that they had deliberately used this question-first-warned-later tactic. In this case, the evidence of deliberateness starts with the first questioning. Officer Johnson asked Mr. Brannon a direct question at a time when Mr. Brannon was not free to leave. He'd been handcuffed. Both of the officers testified that he was not free to leave at this point. Thus, more random warnings were required, and yet Officer Johnson, a 21-year veteran, did not give these warnings before asking this direct question. This is not a case, as in Loewenstein, where there's an alternative purpose to the questioning. Instead, it's a direct question seeking an inculpatory response. And what about the purpose of trying to see whose drugs these were so we can let the driver go, which actually happened, and arrest the defendant, or let the defendant go and arrest the driver? I mean, isn't that part of the purpose of general on-the-scene questioning? Well, that would be trying to reach an inculpatory response, and so that would – there's no difference. In Loewenstein, the alternative purpose was asking for consent to search. So that was farther removed from the purpose of trying to figure out who had done it. I mean, that's the goal of any interrogation, really. And so – You just argued if these statements weren't in and the drugs were found on the passenger seat after the guy's out of the car, you'd have a good argument – your client would have a good argument at trial saying, hey, these weren't mine. They must have been the driver's. So isn't that same argument in the officer's mind when he's got both people on the scene, he's got to figure out whose drugs those were on the passenger seat? Well, Your Honor, if we're talking about probable cause, there's probable cause to arrest both of them. I think, again, in any interrogation, that's what the officer's trying to figure out is who's responsible for this crime. So I don't think that is alternative purpose that doesn't require Miranda warnings. I'm not saying that Miranda's weren't required. I'm talking about the four objective Lopez elements, you know, applying CBER to this situation. I mean, the State didn't argue that that was admissible, that that first statement was admissible. I'm not saying it's admissible. I'm talking about those four objective factors. And I believe the how clear it was whether this statement is admissible goes to the evidence of deliberateness. You look to the fact that clearly Miranda was required here, and yet this officer didn't give it. Thus, there is a deliberate withholding of the warnings from Mr. Brandon. Do we have to weigh those four factors all the same? Or can we give whatever certain factors more weight or less weight? It's a totality of the circumstances situation. For instance, in Lopez, there's a changing of the personnel of who's questioning the defendant from the first interrogation to the second interrogation. So all four factors don't need to be present. I believe you're correct that it is. You can weigh whichever factors are more important given the specific facts of the case. But here, I mean, one of the factors is completeness. And this one question is basically, why are you lying to us? Are you going to keep lying to us? That was the question. Are you going to keep lying to us? That was the one question he asked. How can you argue that's a complete interrogation? Well, because that's all that's needed for possessing these drugs. They found them in the car the defendant was in. If he says … That's not all that's needed for possession with intent to deliver. Well, that's … That's going to take more, either more drugs or more conversation with the officers. Yes, but, again, that's just one of the factors that's present in this case. If you look at the evidence from the second interrogation, it's close in time to the first questioning. It's the same two officers present. And a reasonable person would not think that they could deny possessing these same drugs after admitting to it barely an hour before. I think the completeness factor kind of goes to what they were talking about in Harris, which is whether there was an indication as to the pre-warning questioning being systematic, exhaustive, and managed with psychological skill. Are you arguing that this one question, hey, why do you keep lying? Are you going to keep lying to us? That one question was systematic, exhaustive, and managed with psychological skill by those officers? Well, we don't know if he would have denied it. We don't know if the officers would have continued questioning him. In fact, it's a common interrogation tactic to challenge a defendant's prior statement. And that's what the officer was doing here. He was challenging his prior denials with this new evidence, holding up this bag of drugs. And so it is similar to the goals of a normal interview room interrogation. If I understand your argument, the police officer should have given a random warning to the driver as well and asked the driver if these were his, or are you suggesting that that wasn't necessary? If the officer wanted to question the driver, he should have given him random warnings. In fact, but the driver, another such factor is that the driver was not handcuffed. He was not free to leave given the traffic stuff, but he had not been searched. He had not had drugs found in his coat pocket. What I'm getting at is you say this was error, and so my question to you is if it's error, what isn't? What would the scenario should have been if it were not to be error? The officers could have simply mirandized Mr. Brannon at the scene before they questioned him, or they could have used other investigatory techniques to try to determine which of these two individuals should be arrested. But your client, it's not as if your client was silent. He was a canary. He was protesting his innocence, correct? I mean, that was the setting. He was saying, you know, I didn't do anything wrong, et cetera, correct? Yes, but officers often have to deal with individuals protesting their innocence in the same way. The conversation occurs in those situations, and it's not always, you know, meant to elicit, you know, a full confession. As Justice Burke inquired, the record showed that they were trying to sort out who to arrest if they had to arrest the driver. Well, this is not just back-and-forth conversation. This is a direct question seeking an inculpatory response. And so I think in that situation, mirandum warnings were required and should have been given in this case. If there are no further questions, for these reasons, Mr. Brannon requests that this court reverse his conviction for possession of cannabis and remand his case for a new trial on the controlled substances charge. Thank you, Counselor. You will have time for rebuttal. Mr. Schmidt, you may proceed. Good morning, Your Honors, Counsel. May it please the Court, my name is Matthew Schmidt, and I'll be representing the people in this matter. There are, indeed, two issues. The first is whether or not the frisk was proper of the defendant at the scene. The second is whether or not the trial counsel was ineffective for failing to file a motion to suppress statements. Was the first statement admissible or inadmissible? On the plain facts, it would seem that the original statement would be inadmissible as he was clearly under arrest and he did give an inculpatory statement without the mirandum warnings. However, what I would disagree with, Counsel, is that this original question was a deliberate seeking of an incriminatory statement. As Your Honors pointed out, the defendant had been standing there protesting his innocence the whole time, and even while they're finding drugs, both the marijuana and the heroin, and the officer simply said, are you going to continue to lie to us? He didn't say, are these drugs yours? Are these drugs the driver's? In my mind when I was reading this, it's kind of an exasperated question. Are you going to keep saying you're innocent when we're finding all this stuff? The four objective factors, the timing, setting, completeness of pre-warning interrogation, continuity of personnel overlap in statements, really point to the fact that this was not a deliberate use of the question first, warn later standard. I mean, as you said, Justice Burke, this is not a systematic, exhaustive, and managed with psychological skill round of questioning. They asked one question. There's no evidence that they asked him anything else before taking him to the station and properly mirandizing him, at which point he repeated the fact that the drugs were his and expanded upon the story of why he was there. Let me ask you this. How far did this vehicle drive without its headlamps? According to the officers, it pulled onto the street, went a little bit, and then pulled back in. And what's a little bit? I'm not sure if the precise amount was in the record. If a person's driving a vehicle and they pull out of a parking space and they realize that their headlamps are for some reason, mechanical or otherwise, are inoperable, and they decide, I'm pulling back in because I don't have headlamps. It's not safe to drive at night. Is that a violation of the vehicle code? To be honest. Is it driving without headlamps to pull out and then pull back in? I'm not sure of the precise definition in the traffic code for that violation. Well, that was the basis for the stop. So is that a violation? I would say yes, Your Honor, if you're moving on a public way without your headlights on, without two people wearing your seatbelts, I think that is a violation, whether you travel two feet or whether you travel several hundred feet. What is a high crime area? What's the definition of a high crime area? I'm not sure, Your Honor. It's an area where people drive around without their headlights on. Perhaps. We know that both officers testified that there was a lot of gang activity and a lot of drug activity in the area. I don't know if there's a specific statutory definition. I apologize. That's okay. Do people that live in a high crime area, by virtue of the fact that they live in a high crime area, sacrifice some of their constitutional rights? I don't believe so, Your Honor. However, it does go to the totality of the circumstances when determining whether or not the police had reason to search the subject, either in a Terry staff analysis or even in a problem cause analysis for obstructing justice. The Supreme Court in People v. Raby said that any prevention or delay in the performance of an officer's duties counts. This court in People v. Synod said when a defendant even places an officer in fear for his or her safety, that's a significant impediment to the performance of the officer's duties. How does walking away pose a danger to the officers? Well, both officers testified that it was a high crime area. They didn't know where the defendant was going. He could have been running away to get someone around the corner. He could have been turning away, trying to pull a weapon out of his pants before the officers were able to maintain control of the situation. As you said, the officer, after a valid traffic stop, has the right to control both the passenger and the driver's actions. The testimony and the trial court's finding was that he was ordered to stay by the car and continued walking away. Now, whether they chased him down after three to four seconds or whether they chased him down after a three block long chase isn't really the point. The point is that he knowingly obstructed a valid traffic stop and knowingly obstructed the performance of the officer's duties. So alternatively, we would also argue that that goes to, that the high crime area goes to a real fear for the officer's safety. In the more of a Terry stop analysis, in Arizona v. Johnson, the United States Supreme Court said that an officer wasn't required to let a defendant kind of wander around after a traffic stop, that she could pat him down for fear of her safety. And I think that's very similar to what we have here. We have a defendant who is basically trying to wander around, casually walking away because perhaps he's one of the smarter defendants and he didn't start bolting. And the state asserts that we should not force officers to be in fear of their safety during a traffic stop when they have the right to determine where passengers and drivers should go, what they can do. Alternatively, I agree that it would be a precedent setting to not allow someone to shine a flashlight into a pocket, especially when the evidence shows that one of the officers testified that the pocket was bulged open and the evidence shows that there was over an ounce of marijuana in the defendant's pocket. We're not talking about a small amount that you kind of have to dig through the pocket for. This is quite a bit of marijuana. Did the frisk cause the pocket to come open? The defendant testified the pocket was closed. The trial court didn't believe that. Correct, Your Honor. The officer indicated that the pocket was open, but indicated the pocket was open after the frisk. Or it's hard to tell. It is difficult to tell, Your Honor. And I think that's a finding fact by the court that's entitled to deference, that the pocket was indeed bowed open. It is difficult to determine whether it was bowed open the entire time. I mean, the defendant testified that it automatically Velcroed closed. I'm not precisely sure what that means, but it was something in plain view where it's dark out, it's February, presumably there's not a lot of light around. Officers are completely allowed to shine a flashlight on the defendant inside cars, especially where they think their safety is in danger. Do we really need to get into plain view if the officer had probable cause to arrest the defendant for either obstructing or disobeying a police officer? No, Your Honor. The search would have been proper in any event, correct? Correct. I'm just trying to be thorough. But if we find that that wasn't proper and we find that the frisk was improper, what do we do with this bowed open pocket? I mean, are you arguing plain view as a separate, distinct basis for? Yes, Your Honor. It's an alternative basis. First, the probable cause for arrest for obstructing justice. Second would be reasonable fear of safety from a Terry stop. And third would be a plain view exception. And if I could just go back to the. Addressing whether or not the defendant was prejudiced by the admissibility of the prior statements. Well, Your Honor, I don't think this court has to reach that because a defense counsel is not required to bring a motion to suppress that he knows would be futile. And it would have been futile because there's clearly not a situation where there is a deliberate use of question first, warn later. So I would argue that he was not prejudiced. I thought you said earlier in your argument that the response to wanting to stop lying was prior to Miranda. And I thought you said inadmissible. Did you say admissible? I did not, Your Honor. What did you say? I said that the first statement is presumably inadmissible. However, after he was brought to the police station, Miranda, I see again, said it was his marijuana. There's a valid waiver of Miranda rights and gave the complete story about how I was there to purchase. I believe it was the heroin and then distributed and use some of those. Because it was said repeatedly and it wasn't prejudicial because when it was said repeatedly, it wasn't a question first and warn later situation. Correct, Your Honor. It was a simple admission after being fully Miranda eyes at the police station. And we don't. I mean, the only way that would be kept out would be if there was no deliberate if there was deliberateness and if there are no curative measures. And I think the evidence clearly points out that this was not a deliberate question first, warn later situation. One question seemed really seems like it's out of frustration. It wasn't. We know this is yours. Why don't you just admit it? It wasn't. Is these drugs yours? And I think all the other factors, the completeness of pre-warning interrogation, especially in the over. The overlap in statements is one statement that the drugs are his, not the drugs are mine. And I'm here to purchase them and sell them. And, you know, all the rest of it that he later testified to that he later admitted during the second proper interrogation after he'd waived his Miranda rights. If you were arguing the other side, though, you'd say timing is an hour. So it's a relatively short period of time between the statements. The setting is police dominated, where the police have ordered him to stop, stopped him, frisked him, found drugs on him. I think cuffed him even by that time when they were making this one question. Yes, Your Honor. Continuity, same two officers. And there is some overlap, again, between the one question and the other statement. So there are some of these objective factors that, at least arguably, go against your position. So, Your Honor, however, I believe the overall question is whether or not the circumstances were sufficiently different so that the defendant knew it was a different situation. And I think that even though it is perhaps not that long after the argument, an hour and 20 minutes is a fair amount of time in the same two officers. It's clearly a different situation. One is when he's, you know, outside of a store in public at night. The other one is obviously a much more custodial situation. Obviously a different thing where he's in an interrogation room is more formal. So I think the totality of the circumstances would point out that this is both not a question first, warn later, but also that there were curative measures taken. It is a sufficiently different situation, and he was fully apprised of his Miranda rights before the second round of questioning. If the first could really be considered a round of questioning. Unless there are any other questions. For those reasons, we have asked the court to uphold the defendant's conditions. Thank you. Thank you, Counsel. Mr. McCoy, rebuttal argument. Initially, opposing counsel cites Arizona v. Johnson, a U.S. Supreme Court case. However, that case is not controlled here. Specifically, there was a footnote in that case which said that they were not, let me find it, that they did not foreclose consideration of whether the officers had a reasonable suspicion that the defendant was armed and dangerous on remand. So the question of armed and dangerousness was really not addressed in Arizona v. Johnson, and that doesn't control. Second, opposing counsel states that the officers feared for their safety because they thought the defendant may be running around the corner or trying to hide. This was not a headlong flight. This was not a word low case. Again, it's just a matter of seconds before Officer Gardner is able to get in front of Mr. Brannon. In fact, Officer Johnson at one point says that, testifies that Mr. Brannon was just leaning away from, leaning towards walking away from the officers. And this slight movement, as seen in the People v. Smith case cited in our reply brief, even in a high-crime area does not give the officers authority to frisk the defendant. The order was get back in the vehicle, correct? Was that the order? I believe Officer Johnson, yes, said to get back in the vehicle. That's a pretty clear order. And the defendant, instead of obeying that order, goes around to the front of the vehicle where the other officer intersects him, correct? Yes. And this is also a testimony that he said, I didn't do anything wrong. Which I think would go to the fact that he doesn't believe this is a traffic stop. It goes to the fact that he's not getting back in the vehicle. Well, he only has to get back in the vehicle if the officers have the authority to order him back in the vehicle, which turns on the discussion we had earlier of whether this appears to be a traffic stop. So you can resist an unlawful order, is what you're saying? You can go about your business. You can resist an unlawful police order, is what you're saying? Yes, Your Honor. If you do not know that the officers have authority to stop you, then you are not knowingly obstructing an authorized order. If a police officer enters a home without a warrant and a police officer gives an order to a person who's there, stay right here, don't leave, and that person disobeys the order and flees, is that a defense to obstructing justice? The fact that the invalidity of the original entry, is that a defense to the obstructing? It's not, correct? Well, I think it turns on the circumstances, and I think there is a difference between obstructing and resisting. Obviously, you cannot resist an unauthorized arrest, but again, there needs, if there's no reason. I should have used resisting, correct? If there's, if the officers can just order you to stop, and you have to stop, even if it's just a consensual encounter, then the difference between a consensual encounter and a Terry stop just goes away. You're either going, the officers are either going to get to search you without authority, or they're going to be able to arrest you based on obstructing and resisting. The problem with your argument is that you concede in your brief that the stop itself was proper, that there was a traffic violation, the stop was proper, and the officers had the authority to order him back in the vehicle. That's the problem with your argument. Well, there's the second part of the argument as well, if this is a material delay to their investigation. And again, as Komar says, and as Kapolinski says, it's only a mere matter of seconds. The officer, he doesn't, a fair reading of the record, the defendant doesn't even get to the front of the SUV. This mere seconds is not what the legislature intended to criminalize with the obstructing statute. Is there a difference between resistance and disobedience? I believe so. I think resisting is some sort of physical act, physically pulling away from the officers. Well, there's an oxymoron called passive resistance, which during the 60s and the 70s, was people would let us lay down or sit down in the street were ordered to move, and that wouldn't move. And they would go limp when the police officer would try and move them. So the question then becomes, are they really disobeying a police officer's order,  is it obstruction, what is it? So we've been addressing you with issues regarding resistance, and it seems like this might be more appropriate as a disobedience, which may or may not be a resistance of a police officer. Well, I would agree. I would think that this does not rise to the level of Section 311, which is resisting or obstructing a police officer. If there are no further questions, again, Mr. Brannon would request that this court reverses conviction for possession of cannabis and remand for a new trial on the controlled substances charge. I would like to thank the attorneys for their argument. The case will be taken under advisement.